AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Utah

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

OCT 1 5 2019

BY D. MARK JONES, CLERK
_____
DEPUTY CLERK

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )
See attachment A  )
)

Case No. 2:19 mj 702-DBP

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A, incorporation herein by reference.

located in the _____ District of _____ Utah _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B, incorporation herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 841(a)(1) | Distribution of a Controlled Substance |
| 18 U.S.C. 924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |

The application is based on these facts:

See Affidavit in Support of an Application for a Search Warrant.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Tyler K. Olson, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/15/19

_____
*Judge's signature*

City and state:  Salt Lake City, Utah

Dustin Pead, US MAGISTRATE JUDGE
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF UTAH

IN THE MATTER OF THE SEARCH OF:

LG, Model LGL57BL, IMEI:
354061080481280

SAMSUNG, Model: SM-B111V, MEID
HEX: A000004778FAB8

SAMSUNG, Model: SM-B111V, MEID
HEX: A0000047787352

ZTE, Model: Z233V, IMEI: 99000887170718

ZTE, Model: N9136, SN: 3257746240AA

SAMSUNG, GALAXY NOTE8, Model: SM-
N950U, IMEI 358503082272486,

CURRENTLY LOCATED AT 257 E 200 S,
SUITE 475, SALT LAKE CITY, UTAH.

Case No. _____

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Tyler K. Olson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an

electronic device—which is currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ["ATF"] and have been so employed since 2008.  I served as an ATF Industry

Operations Investigator between 2004 and 2008. I am a graduate of the Criminal Investigator Training Program and ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center at Glynco, Georgia. I am currently assigned to the Denver Field Division, Salt Lake City Field Office, Salt Lake City, Utah. I have participated in the execution of numerous search and arrest warrants involving federal firearm and narcotic violations. I was assigned to the Weber-Morgan Narcotics Strike Force (WMNSF) from 2013 to 2019, and participated in the gathering of evidence related to investigations involving firearms and controlled substances. I am currently assigned to the ATF Salt Lake City Field Office as a Certified Fire Investigator Candidate. My primary duty is to investigate fires involving federal jurisdiction to determine origin and cause. I have been trained by ATF to be a Mobile Extraction Technician to extract and analyze mobile device data. I am familiar with the exploitation of cellular telephonic technology as it relates to criminal investigations. As a result of my training and experience as an ATF agent, I am familiar with federal and state criminal laws.

3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The property to be searched is described as:

- LG, Model LGL57BL, IMEI: 354061080481280
- SAMSUNG, Model: SM-B111V, MEID HEX: A000004778FAB8
- SAMSUNG, Model: SM-B111V, MEID HEX: A0000047787352
- ZTE, Model: Z233V, IMEI: 99000887170718
- ZTE, Model: N9136, SN: 3257746240AA
- SAMSUNG, GALAXY NOTE8, Model: SM-N950U, IMEI 358503082272486

hereinafter the "Devices." The Devices are currently located at the ATF Evidence Vault, 257 E. 200 S., Suite 475, Salt Lake City, Utah.

5.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

6.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.

7.      As set forth below, I submit that there is probable cause to believe that within the data inside the Devices there exists evidence of violations of 21 U.S.C. § 841(a)(l), Possession of a Controlled Substance with Intent to Distribute, and 18 U.S.C. § 924(c), Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime.

## PROBABLE CAUSE

8.      On July 13, 2017, ATF Special Agents assisted the Weber Morgan Narcotics Strike Force (WMNSF) with CI-1's[1] purchase of crack cocaine and a firearm from Gladstone Adams. CI-1 had previously made an unrecorded phone call to Adams at 385-389-0734, which Agents confirmed on CI-1's phone, to arrange for the purchase of the crack cocaine.

9.      The Strike Force used CI-1 to make the purchase. Agents searched CI-1's person and vehicle for contraband with negative results. Agents provided $500 to CI-1 to purchase narcotics from Adams. CI-1 was wired with a recording and transmitting device.

---

[1] CI-1 has worked for ATF for the past 18 months and has provided credible information in the past that has been independently corroborated. CI-1 has participated in numerous, successful, controlled drug purchases conducted by law enforcement officers. At this time, I consider information provided by CI-1 to be reliable. CI-1 has previously been convicted of a misdemeanor charge of battery and some minor traffic offenses. CI-1 is a paid informant. CI-1, to my knowledge, has not knowingly made false statements to law enforcement.

10.     CI-1 went to 167 28th Street in Ogden, Utah, and met with Adams. Adams instructed CI-1 to go to 2747 Wall Ave, Ogden, Utah, to conduct the transaction. Prior to CI-1 arriving at the new location, Agents observed Adams and Michelle Mann on the front porch of the residence. Agents observed Adams and Mann meet with CI-1 in the driveway at 2747 Wall Ave, Ogden, Utah. Adams then sold CI-1 $100.00 worth of crack cocaine and asked CI-1 if he/she wanted more. CI-1 stated that he/she did want more crack cocaine. CI-1 observed Adams make a phone call. Adams then told CI-1 he would have the additional cocaine in a few minutes. Adams, using phone number 385-389-0734, called Darrell WASHINGTON on telephone number 385-245-5030, three times in this time period (6:12pm, 6:14pm, and 6:24pm). Due to my training and experience, I believe Adams was calling WASHINGTON for the purpose of obtaining and selling crack cocaine. A few minutes later, a person identified as WASHINGTON, arrived at the residence and met with Adams. WASHINGTON was driving a rented brown Chevrolet Tahoe with Montana plate #766523B, which is registered to EAN Holdings LLC, Kalispell, MT (Enterprise Car Rental).

11.     On July 19, 2017, ATF Agents assisted the WMNSF with CI-1's purchase of crack cocaine from WASHINGTON. Agents met with CI-1 at a predetermined staging location. CI-1 made a recorded phone call to WASHINGTON on 385-245-5030 in the presence of Agents at 2:51PM. During the recorded conversation, WASHINGTON stated, "What you trying to do, man?" and CI-1 replied, "The same, the half... I have $675." WASHINGTON replied, "$675... Call me when you get on Patterson." WASHINGTON instructed CI-1 to meet at the gas station on Patterson St and Wall Ave in Ogden. CI-1's person and vehicle were searched for contraband with negative results. CI-1 was given $680.00 in buy money. CI-1 was equipped with a transmitting and recording device.

12. At approximately 3:10 PM, Agents followed CI-1 to the meeting location and observed CI-1 during the transaction. CI-1 attempted to call WASHINGTON on 385-245-5030 but the call went to voicemail. CI-1 attempted to call WASHINGTON on 385-245-5030 a second time and it again went to voicemail. CI-1 then received a phone call from WASHINGTON on 385-245-5030, who told CI-1 that he would be there in one minute. WASHINGTON arrived at the meeting location a few minutes later in a blue Dodge pickup truck. CI-1 entered the backseat of the pickup truck where CI-1 purchased crack cocaine from WASHINGTON for $660.00. After the transaction was completed, CI-1 was followed by Agents to a predetermined meeting location where Agents recovered the crack cocaine and extra buy money from CI-1. CI-1 and vehicle were again searched with negative results. Agents maintained custody of the cocaine. The cocaine weighed approximately 16 grams and field-tested positive for cocaine.

13. On October 4, 2017, ATF Agents obtained a Title III wire intercept for electronic communication order from the Honorable Judge David Nuffer and began monitoring telephone number 385-245-5030 belonging to Darrell WASHINGTON. Agents found that WASHINGTON was using multiple phones.

14. On November 3, 2017, the Honorable Judge Clark Waddoups signed an order to continue monitoring the phone and three additional phones used by WASHINGTON.

15. From October 4, 2017, until November 29, 2017, Agents intercepted thousands of phone calls between WASHINGTON and other identified and unidentified subjects, on these phone numbers, pursuant to the federal Title-III order. Agents listened to WASHINGTON make hundreds of narcotic transactions involving heroin, methamphetamine, cocaine, and marijuana. Agents heard WASHINGTON talk about firearms and recovered multiple firearms during the investigation. Agents conducted video and physical surveillance on suspected drug and firearm

activities. Agents observed and documented over 50 suspected narcotic transactions. Agents conducted "wall stops" using local marked police officers and confirmed that WASHINGTON was distributing narcotics. In almost all cases, the person stopped possessed narcotics.

16.     On November 29, 2019, Darrel WASHINGTON was arrested on a federal arrest warrant. WASHINGTON was safely taken into custody at a hotel in Ogden, Utah. During the search incident to arrest, Agents located six cell phones and $13,321 in cash on his person. The cell phones are described as:

- LG, Model LGL57BL, IMEI: 354061080481280
- SAMSUNG, Model: SM-B111V, MEID HEX: A000004778FAB8
- SAMSUNG, Model: SM-B111V, MEID HEX: A0000047787352
- ZTE, Model: Z233V, IMEI: 99000887170718
- ZTE, Model: N9136, SN: 3257746240AA
- SAMSUNG, GALAXY NOTE8, Model: SM-N950U, IMEI 358503082272486

17.     Due to my training and experience, I know that drug dealers often utilize multiple phones to communicate and frequently drop or change phones in an effort to avoid detection by law enforcement. This case was no exception. Agents had been monitoring four phones used by WASHINGTON to conduct narcotic transactions.

18.     After WASHINGTON's arrest, Agents conducted five simultaneous search warrants at locations in Ogden, Utah and Salt Lake City, Utah. Illegal narcotics and firearms were located during the search warrants.

19.     The Devices were seized by WMNSF after WASHINGTON's arrest and subsequently were transferred to ATF custody. The Devices are currently in the lawful possession of ATF. Agents believe these cell phones belong to WASHINGTON and were used to facilitate narcotics transactions.

20.     The Devices are currently in storage at 257 E. 200 S., Suite 475, Salt Lake City,

Utah.  In my training and experience, I know that the Devices have been stored in a manner in

which its contents are, to the extent material to this investigation, in substantially the same state

as they were when the Devices first came into the possession of WMNSF and ATF.

## TECHNICAL TERMS

21.     Based on my training and experience, I use the following technical terms to

convey the following meanings:

   a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular

       telephone) is a handheld wireless device used for voice and data communication

       through radio signals.  These telephones send signals through networks of

       transmitter/receivers, enabling communication with other wireless telephones or

       traditional "land line" telephones.  A wireless telephone usually contains a "call

       log," which records the telephone number, date, and time of calls made to and

       from the phone.  In addition to enabling voice communications, wireless

       telephones offer a broad range of capabilities.  These capabilities include: storing

       names and phone numbers in electronic "address books;" sending, receiving, and

       storing text messages and e-mail; taking, sending, receiving, and storing still

       photographs and moving video; storing and playing back audio files; storing

       dates, appointments, and other information on personal calendars; and accessing

       and downloading information from the Internet.  Wireless telephones may also

       include global positioning system ("GPS") technology for determining the

       location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22.    Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.samsung.com, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.   *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26.   *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/

/

/

/

/

/

## CONCLUSION

27.    I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Devices described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

Tyler K. Olson
Special Agent
ATF


Subscribed and sworn to before me
on October 15, 2019:

Dustin Pead
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched:

- LG, Model LGL57BL, IMEI: 354061080481280
- SAMSUNG, Model: SM-B111V, MEID HEX: A000004778FAB8
- SAMSUNG, Model: SM-B111V, MEID HEX: A0000047787352
- ZTE, Model: Z233V, IMEI: 99000887170718
- ZTE, Model: N9136, SN: 3257746240AA
- SAMSUNG, GALAXY NOTE8, Model: SM-N950U, IMEI 358503082272486

The Devices are currently located at the ATF Evidence Vault, 257 E. 200 S. Suite 475, Salt Lake City, Utah.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(l), Possession of a Controlled Substance with Intent to Distribute, and 18 U.S.C. § 924(c), Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime.

Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.